UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN H. PASCHAL,

       Petitioner,

v.                          Case No. 8:08-cv-1688-T-33TBM

SECRETARY DEPARTMENT OF CORRECTIONS,

       Respondent.

_____/

## <u>ORDER</u>

This cause is before the Court on John H. Paschal's 28 U.S.C. § 2254 petition for writ of habeas corpus. Paschal challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida. An independent review of the record demonstrates that the petition must be **denied**.

## PROCEDURAL HISTORY

On May 16, 2001, Paschal was indicted for the first degree murder of Nathaniel Johnson. He was tried by jury February 8-11, 2005, and found guilty as charged. The state trial court sentenced Paschal to life in prison.

Paschal appealed. After briefing and oral argument, on August 18, 2006, the state district court of appeal per curiam affirmed without written decision in case no. 2D05-1472. *Paschal v. State*, 939 So. 2d 1071 (Fla. 2d DCA 2006)[table]. Rehearing was denied on October 11, 2006.

Paschal filed a pro se motion for reduction of sentence, which was originally dismissed by the state trial court as untimely filed under Rule 3.800(c). Paschal filed a pro

se certiorari petition questioning the untimeliness ruling. Subsequently, the order of dismissal the Rule 3.800(c) motion was rescinded, but the state trial court judge denied the motion to reduce Paschal's sentence. On April 19, 2007, the state district court of appeal dismissed the certiorari petition for lack of jurisdiction in case no. 2D06-5424. *Paschal v. State*, 959 So. 2d 732 (Fla. 2d DCA 2007). Rehearing was denied on June 15, 2007.

Paschal then filed a pro se state petition for writ of habeas corpus dated June 28, 2007. Treating the petition as alleging ineffective assistance of counsel,[1] the state district court of appeal, on July 19, 2007, denied the petition without elaboration in case no. 2D07-3172. *Paschal v. State*, 961 So. 2d 947 (Fla. 2d DCA 2007).

Paschal next filed a pro se Rule 3.850 motion for postconviction relief dated September 25, 2007, which was denied without an evidentiary hearing on January 3, 2008. Paschal appealed the summary denial, and on June 6, 2008, the state district court of appeal per curiam affirmed without written opinion in case no. 2D08-849. *Paschal v. State*, 984 So. 2d 1257 (Fla. 2d DCA 2008)[table]. Following denial of rehearing, the mandate issued July 14, 2008.

Paschal then filed the instant 28 U.S.C. § 2254 petition on August 27, 2008. The petition is timely.

STANDARDS OF REVIEW

The AEDPA Standard

---

[1] See generally, Fla. R. App. P. 9.141(c).

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

Standard for Procedural Default/Procedural Bar

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must

give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception

is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Paschal must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)). Paschal must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."

*Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not

itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## DISCUSSION

### Ground One

Paschal asserts he was denied a fair trial by the state trial court's decision not to give his jury a special instruction. At trial, Paschal requested the state trial court to instruct as follows:

> A person has a right to go about their usual pursuits even though he may anticipate an attack, and if in such pursuits the difficulty is renewed through no fault of his own, he may claim self-defense.

(Resp. Ex. 1, V 2 R 206) The state trial court determined that the standard jury instructions on self-defense were adequate. (Resp. Ex. 1, V 9 T 1019-19) Paschal does not dispute that his jury was given the standard Florida instructions on justifiable use of force. Nonetheless, he maintains the additional instruction was necessary to consideration of his claim of self-defense.

In Florida, while a defendant is entitled to have the jury instructed on his theory of defense, the failure to give special jury instructions does not constitute error where the

instructions given adequately address the applicable legal standards. *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001)(citing *Palmes v. State*, 397 So. 2d 648 (Fla. 1981)). The standard jury instructions are presumed correct and are preferred over special instructions. *Stephens*, 787 So. 2d at 755-756(citing *State v. Bryan*, 290 So. 2d 482 (Fla. 1974)). A defendant such as Paschal has the burden of demonstrating that the state trial court abused its discretion in giving only standard instructions. *Id.*(citing *Phillips v. State*, 476 So. 2d 194 (Fla. 1985); *Williams v. State*, 437 So. 2d 133 (Fla. 1983). To the extent Paschal relies on his state law based arguments in the Florida courts, subject matter jurisdiction does not lie in this Court to address the matters of state law.

Title 28 U.S.C. § 2254(a) provides "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. Federal relief is available to correct only constitutional injury. *Wainwright v. Goode*, 464 U.S. 78 (1983). A challenge to a conviction must therefore do more than pose a question of state law, for such a challenge alleges no deprivation of federal rights and does not merit habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Issues which present nothing more than issues of pure state law are wholly immune from federal habeas review. *See Jamerson v. Sec. for Dep't of Corrs.*, 410 F.3d 682, 688 (11th Cir. 2005)("Federal habeas relief is unavailable for errors of state law.").

It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess state courts' decisions. *Callahan v. Campbell,* 427 F.3d 897, 932 (11th Cir. 2005)(internal quotation and citation omitted); see

also *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Moreover, Ground One is procedurally barred because Paschal did not preserve the claim for review and then raise a federal constitutional claim on direct appeal regarding his request for an instruction on justifiable use of force. Although he sought an added instruction on justifiable use of force at trial and then claimed state court error on appeal for the denial of his request, Paschal raised the issue in state law terms. He did not alert the state trial and appellate courts to a federal constitutional claim regarding jury instructions.

To satisfy the exhaustion requirement of 28 U.S.C. § 2254(b)(1), a state prisoner must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature before seeking federal habeas relief. *See Baldwin v. Reese*, 541 U.S. 27 (2004). Paschal's state law arguments in the Florida courts did not meet the exhaustion requirement. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995)(mere similarity of claims is insufficient for exhaustion).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The petitioner must alert the state court "to the fact that the prisoner [is] asserting claims under the United States Constitution" so that the state court(s) have the opportunity to correct alleged violations of the prisoner's federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995).

In *Baldwin v. Reese,* 541 U.S. 27, 29 (2004), the Supreme Court wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in conjunction

with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin*, 541 U.S. at 32.

Addressing this observation, the Eleventh Circuit has explained:

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.' " *McNair v. Campbell,* 315 F. Supp. 2d 1179, 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. *See Picard*, 404 U.S. at 275, 92 S. Ct. at 512 ("We emphasize that the federal claim must be fairly presented to the state courts."). We therefore hold that "'the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" *Kelley*,[2] 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

The burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without petitioner's raising the claim. *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 851 (2005)(citing *Baldwin*, 541 U.S. at 30-32). By not timely raising the constitutional dimension, if any, of his claim both at trial and on appeal, Paschal deprived the state courts of a "full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a

---

[2] *Kelley v. Sec'y Dep't of Corr.,* 377 F.3d 1317, 1333 (11th Cir. 2004).

federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

Any substantive claim of constitutional error in instructions given Paschal's jury on justifiable and/or excusable homicide is procedurally barred under state law on independent and adequate grounds. In Florida, to preserve an argument for appeal, the constitutional argument must be asserted as the legal ground for the objection, exception, or motion in the state trial court. *See Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993); *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

Furthermore, an issue that could have been raised on direct appeal and was not may not be reviewed in a Rule 3.850 motion. *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990). Because the constitutional dimension of Paschal's claim of instructional error could have, if at all, been preserved and argued on direct appeal, he was foreclosed from bringing the issue as substantive federal claim in a Rule 3.850 motion. *See e.g., Robinson v. State*, 913 So.2d 514, 524 n.9 (Fla. 2005)(finding claim of trial court error procedurally barred because it should have been raised on direct appeal). This circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983).

Paschal has not shown valid cause to excuse his default in state court,[3] and any allegation in that regard is barred by the two-year limitation of Rule 3.850, *see Wheaten* v. *Dagger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine governing successive Rule 3.850 motions. *See Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Not showing cause, Paschal cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. *Engle,* 456 U.S. at 137.

Even if, arguendo, Paschal could show valid cause, Paschal does not plead facts to demonstrate that actual prejudice will result if his claim is not addressed on the merits. Nor does he meet the fundamental miscarriage of justice exception. He does not demonstrate the existence of new and reliable evidence of actual innocence not available at the time of his trial as a gateway to avoid the bar under *Schlup v. Delo*, 513 U.S. 298 (1995).

---

[3] In his Rule 3.850 motion Paschal did not allege and show ineffectiveness of counsel as cause to excuse his default of any federal due process claim regarding the trial court's ruling on his counsel's instruction request.

In order to constitute cause sufficient to overcome procedural default, a counsel's performance must be constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Jackson v. Herring*, 42 F.3d 1350, 1358 (11th Cir. 1995). The Supreme Court made clear in *Murray v. Carrier*, 477 U.S. 478, 486-87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." This is true whether the procedural default resulted from counsel's failure to make a claim at trial or failure to raise a claim on appeal. *Id.* at 492, 106 S.Ct. at 2647 (holding that "counsel's failure to raise a particular claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts"). Attorney error is cause for procedural default only if the error rises to the level of constitutionally deficient assistance of counsel under the Sixth Amendment. *Eagle v. Linahan* 279 F.3d 926, 937 (11h Cir. 2001).

Further and alternatively, whether analyzed under the prejudice component or substantively under the AEDPA standards, Paschal's claim does not warrant relief. On federal habeas review, the federal court reviews alleged jury instruction error for the denial of fundamental fairness and due process. *See Spears v. Mullin*, 343 F.3d at 1244(citing *Henderson v. Kibbe*, 431 U.S. 145, 156-57 (1977)(pre-AEDPA case addressing omission of jury instruction on causation). The challenged instruction must not be viewed in isolation; the habeas court should consider the context of the instructions as a whole as well as the entire trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997) ("A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair."). Moreover, "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Kibbe*, 431 U.S. at 155. In such cases, the habeas petitioner's burden is "especially heavy." *Id.*; *Devier v. Zant*, 3 F.3d 1445, 1465 (11th Cir. 1993).

Paschal's theory of defense was that he was so afraid for the children at Elaine Callaway's house, based on a purported threat by Nathanial Johnson, the victim, that Paschal armed himself and sought out Johnson at the latter's home to "talk" to him. Paschal "drove around" for about 30 minutes and down the street where Johnson lived. According to Paschal, he turned around and stopped to try to talk to Johnson. The defense maintained that as Paschal approached him, Johnson reached for something at his side, Paschal saw a flash, and he shot Johnson.

The state's evidence established that no firearm was found at the scene; Johnson was walking away from Paschal when he shot him; and Johnson was shot two times in the back. The thrust of Paschal's proposed instruction was that he was the victim of renewed difficulty[4] as he went about his usual pursuits. However, it is objectively reasonable to conclude the evidence did not support the giving of the instruction. Indeed, the evidence showed Paschal was not going about his "usual pursuits" when he armed himself and sought out the victim.

Paschal's jury was instructed that he was justified in using force likely to cause death or great bodily harm if the jury believed such force was necessary to prevent imminent death or great bodily harm or the commission of aggravated battery to himself or another. The jury was further instructed on exceptions, including the defendant's provoking the use of force against himself or unreasonably failing to avoid the danger before resorting to his use of force. (Resp. Ex. 1, V 2 R 188-89, V 11 T 127-28)

It is objectively reasonable to conclude the instructions to Paschal's jury adequately covered his theory of self-defense. The instructions addressed his theory that he armed himself before seeking out Johnson because he was afraid of the victim's prior threats. Paschal argues the instructions given failed to explain that in some instances, a person is justified in taking a risk that the aggressor will renew earlier combat. (Doc. No. 1 at 17). Notwithstanding Paschal's narrow reading of the instructions, when the instructions are

---

[4] As stated above, the requested jury instruction was:

A person has a right to go about their usual pursuits even though he may anticipate an attack, and if in such pursuits the difficulty is renewed through no fault of his own, he may claim self-defense.

(Resp. Ex. 1, V 2 R 206).

viewed in their entirety, they fairly conveyed with sufficient clarity that justifiable homicide applied to the charged first degree murder.

Under applicable state law, a person under attack, other than in his home or immediately surrounding premises, has a duty to "retreat to the wall" before taking a life; the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life. *See Soberon v. State*, 545 So. 2d 490 (Fla. 3d DCA 1989). The standard Florida instructions do not force the jury to guess how to deal with the situation where a defendant claims he was going about his usual pursuits with anticipation of an attack and maintains the "difficulty was renewed" through no fault of his own. The instructions make clear he still must not provoke the use of force or unreasonably fail to avoid the danger.

In short, the evidence did not support the giving of the proposed instruction in Paschal's case. At any rate, the instructions adequately covered the theory of the defense and were not misleading or confusing. Thus, Paschal cannot show the state court's decision not to instruct beyond what was required by Florida's standard instructions infected his entire trial such as to deprive him of due process.

Further and alternatively, the asserted instructional error, if such rose to constitutional error, is subject to review based upon the "harmless error" standard, which prescribes that an infirmity warrants reversal only when it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, (1993).

The state adduced ample evidence establishing Paschal's guilt of first degree murder beyond a reasonable doubt and demonstrating his use of deadly force was neither justifiable nor excusable under any definition. In view of the ample evidence from which a rational jury could find he was not going about his usual pursuits and was not justified in twice shooting the unarmed victim in the back, it is objectively reasonable to conclude any claimed error in refusing to instruct the jury as proposed was harmless.

The state courts' decisions resulted in a reasonable application of federal law as clearly established by the Supreme Court and a reasonable determination of the facts in light of the evidence.

Ground One does not warrant habeas corpus relief.

### Ground Two

Paschal contends the denial of a continuance to obtain a witness denied him a fair trial. Paschal has not properly exhausted the claim and the claim is procedurally barred.

On direct appeal, Paschal cited to *Dickerson v. Alabama*, 667 F.2d 1364 (11th Cir. 1982), in which the Eleventh Circuit concluded that denial of a continuance violated the state prisoner's Fifth Amendment right to compulsory process. However, Paschal did not fairly raise, in state court, a constitutional compulsory process claim relative to the trial court's denial of a further continuance on the fourth day of trial. (Resp. Ex. 1, V 9 T 1022-24) Nor did he assert that denial of his request for a continuance would violate the Due Process Clause. Nothing in his request to the trial court would have alerted the state trial court to the presence of a federal claim about due process or the right to compulsory process.

Moreover, although he cited *Dickerson*, Paschal did not specifically argue that the denial of a continuance in his particular case resulted in a violation of his constitutional right to compulsory process or a federal due process deprivation. His reference to the holding in *Dickerson* was no more than a "needle in a haystack." *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005)(exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record).

Furthermore, on the merits, Paschal cannot surmount the highly deferential AEDPA standards governing review of the silent affirmance on direct appeal. The Supreme Court has held the matter of continuance is traditionally within the discretion of the trial judge, and not every denial of a request for more time violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)(citations omitted). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. Whether a denial of a continuance is so arbitrary as to violate due process "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589.

The Eleventh Circuit had held that when a motion for a continuance for the purpose of securing defense witnesses is denied, a federal court considers the following factors to determine if the trial court abused its discretion in denying the motion: the diligence of the defense in interviewing witnesses and procuring their presence; the probability of procuring their testimony within a reasonable time; the specificity with which the defense is able to describe their expected knowledge or testimony; the degree to which such testimony is

expected to be favorable to the accused, and the unique or cumulative nature of the testimony. *Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. 1981) (citing *United States v. Uptain*, 531 F.2d 1281, 1287 (5th Cir. 1976)). Further, under circuit precedent, the petitioner must show that denial of a continuance caused "specific substantial prejudice." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1326 (11th Cir. 2002) (citation omitted).

Paschal does not demonstrate that the state trial court's denial of his request for a continuance was so arbitrary as to amount to a denial of due process. At the close of the first day of trial, Paschal's trial counsel advised the state trial court the defense had witnesses who did not appear, including Leslie Carter. (Resp. Ex. 1, V 4 T 386-90). Paschal did not object to the state trial court's addressing the matter the following morning. (Resp. Ex. 1, V 4 T 386-90) The next day, the state trial court assisted the defense by issuing writs of attachment to secure the presence of the subpoenaed witnesses. (Resp. Ex. 1, V 5 T 398-99, 404).

On the third day of trial, the state court granted a continuance to the extent of postponing the proceedings for approximately twenty minutes to allow the defense time to locate the witness. In addition, the trial court allowed the defense to keep its case open to continue searching for Carter during the state's rebuttal and overnight before trial resumed at 10:00 a.m. on the last day of trial. (Resp. Ex. 1, V 8 T 987-1011). Paschal's counsel argued that the defense was entitled to additional time. (Resp. Ex. 1, V 9 T 1022-24). Paschal claims there was no indication the defense could not have procured the witness's testimony in a reasonable time. (Doc. No. 1 at 20). He overlooks the fact that he has the burden to demonstrate that the trial court abused its discretion and that the state trial

court's ruling rendered his trial fundamentally unfair. *See Conner v. Bowen*, 842 F.2d 279, 283 (11th Cir. 1988)(A habeas petitioner who claims that the state trial court's refusal to grant a continuance denied him due process of law must demonstrate, first, that the trial court abused its discretion and, second, that its action rendered the petitioner's trial fundamentally unfair)(citing *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir. 1981)).

Paschal was afforded ample opportunity in state court, but failed to demonstrate Carter could be produced within a reasonable time. Carter was under subpoena and the subject of efforts to locate her for at least four days. During that time, the defense had the assistance of the sheriff's office in serving the writ of attachment. Based on the concerted efforts to locate Carter, it is objectively reasonable to conclude she was not available to testify.

Furthermore, Paschal failed to show that denial of a continuance caused him specific substantial prejudice. Based on the present record, it is objectively reasonable to conclude Carter was not a critical witness for the defense. Paschal's trial counsel submitted that Carter would testify Johnson was a drug dealer who carried a firearm and was involved in a gang. Paschal does not dispute he was afforded wide latitude in eliciting testimony in this regard from numerous witnesses. Through such opportunity, he was able to adduce testimony reflecting that Johnson was a drug dealer[5] known to carry and use a firearm[6] and was involved in a gang.[7]  With such awareness, the jury rejected Paschal's theory that

---

[5] Witnesses  Kinkle, Luvenia Callaway, Bargman, Officer Burch, Elaine Callaway, Paschal.

[6] Witnesses  Kinkle, Luvenia Callaway, Bargman, Officer Burch, Elaine Callaway, Paschal.

[7] Witnesses  Bargman, Officer Burch, Elaine Callaway.

-19-

he killed Johnson in self defense. Paschal did not establish a basis to conclude Carter was a material witness for the defense.

Even assuming that Carter could have testified that the victim had a reputation for violence in the community, that testimony was not vital to the defense because the testimony would have been cumulative. Moreover, although Pascal had the opportunity to do so in state court, Paschal did not assert and show that Carter was actually present when Paschal chose 1) to arm himself on the day in question; 2) to drive to the victim's residence; and 3) to shoot Johnson twice in the back. Under the circumstances, it is objectively reasonable to conclude the state trial court was within its discretion to deny the continuance request. Thus, the silent affirmance of the trial court's denial of Paschal's request for a continuance was neither contrary to nor an unreasonable application of Supreme Court precedent.

Ground Two does not warrant habeas corpus relief.

Ground Three

Paschal contends his appellate counsel rendered ineffective assistance by failing to argue that the only African American in his jury pool was stricken in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In his supporting facts, Paschal asserts the prosecutor moved to strike Zachary Smith, the only black venire member based on Smith's responses which revealed his brother was charged and convicted of murder and that Smith thought his brother was wrongfully convicted. (Resp. Ex. 1, V 4 T 241). Paschal alleges that the State did not indicate whether the strike was for cause or whether the strike was a peremptory challenge. Pascal claims that there was not

sufficient basis for a strike for cause. Paschal also asserts that the State did not show race-neutrality.

Ground Three is procedurally barred because Paschal did not contend in his Rule 9.141(c) petition in the state district court of appeal that his appellate counsel rendered ineffective assistance by failing to raise a *Batson* claim. Paschal only claimed that the African American juror was allowed to be stricken without a full hearing pursuant to *State v. Neil*, 457 So. 2d 481 (1984). *Neil*, which predates *Batson*, finds its origin in the Florida Constitution. *Batson*'s origin lies in the Fourteenth Amendment to the United States Constitution.

In *Batson*, the Supreme Court held that a prosecutor's use of peremptory challenges to preclude Blacks from serving on a petit jury because of race violates the Equal Protection Clause of the Fourteenth Amendment. *Id.* In conjunction with its holding, the Court established a framework for courts to use in evaluating *Batson* challenges to the state's use of peremptory strikes: The defendant must first make out a prima facie case of discriminatory purpose on the part of the prosecution and, if the defendant has made out a prima facie case, the prosecution must "come forward with a neutral explanation for challenging black jurors." *Eagle v. Linahan*, 279 F.3d 926 (11th Cir. 2001)( quoting *Batson*, 476 U.S. at 96-97). Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. See *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (plurality opinion) (citing *Batson*, 476 U.S. at 97).

Although Paschal cited *Batson* in his Rule 9.141(c) petition, Paschal did not specifically claim his appellate counsel was ineffective for failing to argue that Smith's strike was racially motivated in violation of Paschal's constitutional right to equal protection. Nor did he assert his appellate counsel rendered ineffective assistance by failing to argue that Paschal, at trial, made out a prima facie case of discriminatory purpose on the part of the prosecution and that the state trial court failed to make an ultimate determination as to purposeful discrimination pursuant to *Batson.* As a result, Paschal is procedurally barred by the two-year limit of Rule 9.141(c), the state's successive petition and law-of-the case doctrines from raising his claim in another petition under Rule 9.141(c). *See Isley v. State,* 652 So.2d 409 (Fla. 5th DCA 1995)(bar to successive claims which were or could have been raised previously under doctrines of res judicata and law of the case applies equally to petitions for habeas corpus and the two-year limitation of 9.141(c)).

Paschal has not shown cause or prejudice to overcome the procedural bar, and has not the manifest injustice standard. The Court is therefore prohibited, under *Sykes*, from considering the merits of Paschal's claim of ineffective assistance of counsel relative to this claim.

Further and alternatively, Paschal's claim of ineffective assistance of counsel has no merit. Paschal must show the state court's decision resulted in an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674 (1984). *See Shere v. Sec. Dept. of Corrections*, 537 F.3d 1304 (11th Cir. 2008)(citations omitted)("Shere is entitled to federal habeas relief only if the Florida Supreme Court's resolution of his ineffective assistance of appellate counsel claim is contrary to, or an

unreasonable application of, clearly established federal law, as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d)."). The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992).

Paschal must first show that his appellate counsel was objectively unreasonable in failing to raise the omitted issue. *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746 (2000). Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983)(effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86(citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome").[8] Paschal must also establish it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286.

Paschal's allegations in his state habeas petition did not overcome the strong presumption that his appellate counsel used reasonable professional judgment in making

---

[8] Eleventh Circuit precedent is in accord. There is no duty to raise issues on appeal which have little or no chance of success. Thus, appellate counsel is not required to raise meritless issues, *Card v. Dugger,* 911 F.2d 1494, 1520 (11th Cir. 1990), or issues that were not preserved and are procedurally barred on appeal, *Bertolotti v. Dugger*, 883 F.2d 1503, 1523 (11th Cir. 1989), *cert. denied*, 110 S.Ct. 3296 (1990); *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).

all significant decisions concerning the state's peremptory juror strike. *Strickland,* 466 U.S. at 36 of 56 37 689-90, 104 S.Ct. 2052. The state exercised a strike on Mr. Smith, stating, "The State would strike Mr. Smith based on his answers that his brother was charged and convicted of murder, and that he thought he was wrongfully accused and convicted." (Resp. Ex. 1, V 4 T 241) The state trial court then stated, "I'll allow the State to use a peremptory challenge on Mr. Smith." *Id.* Paschal did not timely challenge the state's reasons for the strike.

The following exchange occurred in the state trial court:

MR. WATERS: Judge, I'd like to seat an African American.

THE COURT: Noted.

MR. WATERS: If possible.

THE COURT: I understand. I believe that the reasons just given by the State are race natural [sic] and allow him to be stricken peremptorily. How do you feel about 37 and 39?

MR. FLUKE. Defense strikes 39.

THE COURT: Defense uses one of its alternate challenges on 39. That brings on 40. State, do you accept?

MR. O'KEEFE: Yes,

THE COURT: Defense, do you accept?

MR. WATERS: I just need to put in an objection. I believe we rehabilitated the juror. As far as race neutrality, he indicated he could be fair. I asked him, would you be fair and listen to the facts and he said, yes. And then I asked if he would follow the law, and he said he would.

MR. O'KEEFE: Under *Cunningham versus State,* Judge, the fact that a relative is in prison is race natural [sic]. And in particular with this case he said that his brother is in prison for a murder.

-24-

THE COURT: In my opinion, Mr. Waters, you might have rehabilitated him as far as a cause challenge is concerned. But, as far as a peremptory challenge is concerned, I believe the reasons given by the State are race natural [sic]. And, therefore, that is all that is necessary in order to exercise a peremptory. So, is Defense accepting of Number 40, the other alternate?

MR. FLUKE: Yes.

(Resp. Ex. 1, V 243-44).

As can be seen from this extract, Paschal's counsel did not contemporaneously object on the basis that the reasons the State gave were other than race neutral. After other matters were addressed, defense counsel stated:

MR. WATERS: Judge, I apologize, I've got to do this. I made a mistake. This is just technical, but we have to say we don't accept the panel because we have an objection on the lack of race natural [sic] reasons for the juror, and we raise the *Batson* challenges. So, technically, Judge, we can't accept the panel. We object to it.

(Resp. Ex. 1, V 4 245).

At least one reasonably competent attorney could conclude that a *Batson* claim was not adequately preserved for review because there was no contemporaneous objection to the prosecutor's reasons for the strike. More particularly, one competent attorney could reasonably conclude there could be no renewal of a *Batson* claim because there had been no timely objection, either when the prosecutor gave his reasoning or when the state trial court found the reasons were race-neutral.

Further and alternatively, at least one reasonably competent attorney could conclude Paschal has not established a prima facie case of discrimination. A defendant makes out a prima facie case of discrimination in jury selection by showing that "'he is a member of a cognizable racial group' and that 'the relevant circumstances raise an inference' that [the

prosecution] has 'exercised peremptory challenges to remove from the venire members of [his] race.' " *Fludd v. Dykes*, 863 F.2d 822, 829 (11th Cir. 1989)(quoting *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723).[9]

Paschal did not make a prima facie showing at trial that the prosecutor exercised the challenge on the basis of race. There was nothing inherently discriminatory in the prosecutor's reasons for striking Smith. In accepting the state's reason, the state trial court found there was a sufficient racial-neutral basis for the strike. With respect to Paschal's underlying *Batson* claim, this finding is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *see also, Hernandez v. New York*, 111 S.Ct. 1859, 1868-70 (1991)(state trial court's finding on the ultimate issue of discriminatory intent is accorded a presumption of correctness in federal habeas proceedings); *Purkett v. Elem.*, 514 U.S. 765, 115 S.Ct. 1769, 1771 (1995)(state court determinations under *Batson* of whether peremptory strikes were motivated by group bias are presumed to be correct). The state court was in the best position to assess the prosecutor's reasons and determine the genuineness thereof. Paschal does not overcome the presumption of correctness. Under the circumstances, at least one competent attorney such as his appellate counsel could reasonably forego a *Batson*-based argument regarding the state's use of the peremptory strike.

Furthermore, Paschal has not shown prejudice. To the extent Paschal relies upon Florida's procedures for challenging the state's exercise of a peremptory strike, the state decision settles that his appellate counsel did not overlook any meritorious state law

---

[9] In *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court held that a defendant of any race can raise an equal protection challenge to the prosecution's discriminatory use of peremptory challenges, thereby eliminating any need for a criminal defendant raising such an equal protection challenge to show commonality of race with the excluded jurors.

argument. It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1354-55 (11th Cir. 2005)(citing *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) (citations omitted).

At trial, Paschal did not carry his burden of proving purposeful discrimination. Based on the juror's remarks in response to defense counsel's voir dire and the prosecutor's articulated reasons for the strike, it is objectively reasonable to conclude the prosecutor satisfied his burden. *See e.g., Hightower v. Schofield*, 365 F.3d 1008, 1034 (11th Cir. 2004). Accordingly, it is objectively reasonable to conclude that had his appellate counsel raised a *Batson*-based argument regarding the state's strike of the venireman, Paschal would not have prevailed on direct appeal. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground Three does not warrant habeas corpus relief.

Ground Four

Paschal faults his trial counsel for failing to have the assigned trial judge recused from his case. In summarily denying his first Rule 3.850 claim, the state trial court held:

> The Defendant alleges that counsel was ineffective for failing to file a motion to disqualify the judge because counsel knew the judge was under investigation for judicial misconduct. The court finds the Defendant's claim without merit.

> As the Defendant states in his motion, the judicial misconduct the judge was being investigated for concerned viewing pornographic websites on his computer and making inappropriate comments and advances towards a female prosecutor. In order to prevail in a motion to disqualify, the Defendant must show that he fears that he will not receive a fair trial or hearing because

of specifically described prejudice or bias of the judge. See Fla. R. Jud. Admin. 2.160(d)(1). Here, the conduct the judge was under investigation for was completely unrelated to the Defendant's case.  As such, counsel had no legal basis to file such a meritless motion. . . .

(Resp. Ex. 13 at 2).

To the extent Paschal relies on his underlying state law arguments, the state trial court, and in turn, the state district court of appeal, by its affirmance, answered the question of what would have happened had his counsel sought recusal pursuant to state law. Accordingly, Paschal cannot show either deficient performance or resulting prejudice from counsel's foregoing the proposed motion for recusal. See e.g., *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005)(Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).[10]

Furthermore, Paschal does not allege facts that show his counsel overlooked a meritorious basis for seeking the judge's disqualification on federal constitutional grounds. At least one reasonably competent attorney at the time could have determined that the alleged judicial misconduct unrelated to Paschal's case did not raise a due process concern as to the fairness and impartiality of the tribunal in Paschal's case. *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

---

[10] Although whether trial counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds). Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted). It is a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *Herring,* 397 F.3d at 1354-55 (11th Cir. 2005); *Agan,* 119 F.3d at 1549.

It is also objectively reasonable to deny this claim on the prejudice prong *of Strickland*. Paschal did not allege facts to show actual bias on the part of the state trial court judge. Nor did he plead facts that would raise an appearance of bias sufficient to override the presumption of the judge's honesty and integrity. *Withrow, supra*. His allegations do not overcome the presumption. The alleged unrelated facts are not such that a reasonable person would be convinced that bias existed in Paschal's case. *See e.g.,Tafero v. Wainwright*, 796 F.2d 1314, 1322 (11th Cir. 1986)(rejecting habeas petitioner's due process claim regarding state court judge's denial of motion to disqualify, finding no showing of personal bias and alleged facts not such that reasonable person would be convinced that a bias existed). Accordingly, even if trial counsel had sought recusal on state or constitutional grounds, Paschal cannot show there was any reasonable probability of a different outcome. The state court decision resulted in a reasonable decision under either prong of *Strickland* and a reasonable determination of the facts in light of the evidence.

Ground Four does not warrant habeas corpus relief.

Ground Five

Paschal faults his trial counsel for failing to preserve the claim that the only African American in the jury pool was stricken without the benefit of a full *Neil* hearing. In summarily denying his second rule 3.850 claim, the state trial court held:

> The Defendant argues that counsel was ineffective for failing to object to the State striking an African-American juror and properly preserving the issue for appellate review. The court finds the Defendant's claim is without merit. A review of the trial transcript shows that the State exercised a peremptory strike on juror number 38, Mr. Smith, who is an African-American.

As the Defendant acknowledges in his motion, counsel objected, stating he would like to seat an African-American on the jury.

> FN1 Although the Defendant alleges the court was not impartial in his case because the State was allowed to strike a black juror, the record shows that the court appropriately applied the law as more fully explained in claim 2 of the Defendant's motion.

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: (a) make a timely objection, (b) show that the venire person is a member of a distinct racial group and (c) request that the court ask the striking party its reason for the strike. If the proponent of the strike comes forward with a facially sufficient race-neutral explanation and the court believes that the explanation is not a pretext, the strike is sustained. The court is not to consider the reasonableness of the explanation, but rather its genuiness. *See Cunningham v. State*, 838 So. 2d 6237 (Fla. 5th DCA 2003).

> Although counsel did not formerly [sic] request the court [sic] conduct a *Neil* Hearing, the record shows that the requisite findings were made to sustain the peremptory strike of the juror. The State explained Mr. Smith was struck from the jury because he stated that his brother was charged and convicted of murder, and that he believed his brother was wrongfully accused and convicted of the crime. Exhibit B: Excerpt of Trial Transcript; pgs. 241-243. The court found that the State provided a race-neutral reason for striking the juror and the peremptory strike was proper. As the Defendant has failed to demonstrate any prejudice in accordance with *Strickland*, his claim is denied. . . . .

(Resp. Ex. 23 at pgs 2-3).

Paschal does not overcome the presumption of correctness of the state court's factual findings in analyzing and rejecting his claim under the *Strickland* framework. 28 U.S.C. § 2254(e)(1). Nor does Paschal overcome the strong presumption that trial counsel's performance relative to the state's strike of the venire member fell within the wide range of professional competent assistance. *See Strickland*, 466 U.S., at 689-690. The state decision settles the issue that counsel did not overlook a meritorious basis under state law.

Further, as shown in response to ground three of the instant petition with respect to the underlying issue, there was no *Batson* violation. In short, Paschal's trial counsel cannot be deemed deficient as counsel did not overlook any meritorious claim, either on state law or constitutional grounds, relative to the state's exercise of the peremptory challenge.

Ground Five does not warrant habeas corpus relief.

## Ground Six

Paschal faults his counsel for failing to object to the introduction of a tape recording of a 911 call made by Sheneil Pickering. (Resp. Ex. 1 V 5 T 461-64) In summarily denying his third Rule 3.850 claim, the state trial court found:

> The Defendant alleges that counsel was ineffective for failing to object to the 911 tape being used at trial. The court finds the Defendant's claim without merit. The record clearly demonstrates that counsel objected to the State [sic] being allowed to introduce the tape and zealously argued that the tape should be excluded. Exhibit B: pgs. 1-28. However, the court ruled that tape admissible. Counsel did raise this issue on appeal and the Second District Court of Appeal affirmed the court's ruling. Exhibit C: Statement of Judicial Acts to be Reviewed. As the Defendant has failed to demonstrate that counsel's actions were deficient and that he suffered any prejudice in accordance with *Strickland,* his claim is denied. . . .

(Resp. Ex. 23 at ps 3-4).

In his Rule 3.850 attack, Paschal did not allege facts which would show that his experienced counsel had overlooked a meritorious basis for challenging the taped evidence under state law. Given that the state courts did not accept Paschal's underlying state law arguments, he cannot show his counsel was ineffective for failing to object further.

In addition, as the attachments to Paschal's Rule 3.850 motion show, his counsel objected to the 911 taped evidence on confrontation grounds. Paschal does not show that counsel overlooked any argument on this claim.

In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Court held the right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id.* 541 U.S. at 53-54. In Paschal's case, at least one reasonably competent attorney such as Paschal's counsel could conclude the statements to the 911 operator were nontestimonial because the circumstances, viewed objectively, indicated the primary purpose of the interrogation by the 911 operator was "to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

Paschal's claim can be disposed of on the prejudice prong of *Strickland*. In view of the independent and ample evidence establishing his guilt beyond any reasonable doubt, Paschal fails to show there was any reasonable probability of a different outcome had his counsel objected further or differently with regard to the taped 911 call. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground Six does not warrant habeas corpus relief.

### Ground Seven

Paschal faults his counsel for failing to invoke the state's witness sequestration rule. The state trial court summarily denied the claim:

> The Defendant alleges that counsel was ineffective for failing to invoke the rule of sequestration for witnesses testifying in pre-trial motions. Specifically, the Defendant alleges that counsel should have moved to invoke the rule before the State played the 911 tape during a pre-trial hearing. The court finds the Defendant's claim is without merit. The record reveals that counsel invoked the rule after playing the tape. Exhibit B: pg. 16. Moreover,

the only witness that testified about the tape was Myrtle George, the aunt of the caller on the 911 tape. One of the reasons, the tape was played at the hearing was so that Ms. George could identify the caller as her niece, who was not available to testify at trial. No other witness testified during this pre-trial hearing. Furthermore, the Defendant does not allege the names of any witnesses, if any, that were unduly prejudiced by hearing the tape. Moreover, the Defendant has not shown that any witness testimony was influenced by hearing the tape. As, the Defendant has failed to demonstrate any prejudice in accordance with *Strickland*, his claim is denied. . . .

(Resp. Ex. 23 at p. 4).

The underlying issue in Paschal's Rule 3.850 claim was one of state law. The state courts have answered the question of what would have happened had Paschal's counsel invoked the sequestration rule under state law. Moreover, his claim is speculative. Paschal does not set forth a basis to conclude that had his counsel invoked the rule, there was any reasonable probability of a different outcome in his case.

Ground Seven does not warrant habeas corpus relief.

### Ground Eight

Paschal faults his counsel for failing to object to testimony of state witness Ruben Reed. In summarily denying his fifth Rule 3.850 claim, the state trial court found:

The Defendant alleges that counsel was ineffective for failing to object to the testimony of Ruben Reed. Specifically, the Defendant alleges that witness was not competent to testify. The court finds the Defendant's claim without merit. The witness Ruben Reed testified coherently as to the events he remembered at the time of the alleged crime. Exhibit B: pgs. 446-456. Furthermore, on cross examination, the witness stated that he was on medication for his schizophrenia and that he had been taking his medication and could think clearly. Counsel had no reason to object to the witness's testimony as he was clearly competent to testify.

Furthermore, the Defendant fails to allege and demonstrate any prejudice, as the Defendant admits that the witness's testimony was "non-relevant" as he could not give a description of the Defendant or even

acknowledge whether the Defendant had a weapon. As the Defendant has failed to meet his burden in accordance with *Strickland*, his claim is denied.

(Resp. Ex. 23 at pgs. 4-5).

Paschal does not overcome the presumption of correctness of the state trial court's factual findings in analyzing and rejecting his claim under the *Strickland* framework. 28 U.S.C. § 2254(e)(1). Nor does Paschal overcome the strong presumption that trial counsel's performance relative to the witness's competency fell within the wide range of professional competent assistance. *See Strickland*, 466 U.S., at 689-690.

This claim can be disposed of on *Strickland*'s prejudice prong. The state's case did not turn on the subject witness, and Paschal does not plead facts showing that had his counsel objected as now proposed, there was any reasonable probability of a different outcome.

Ground Eight does not warrant habeas corpus relief.

## Ground Nine

Paschal faults his counsel for failing to seek a mistrial after the 911 tape was played to his jury. In summarily denying his sixth Rule 3.850 claim, the postconviction court found:

> The Defendant alleges that counsel was ineffective for failing to move for a mistrial after the presentation of the 911 tape. Specifically, the Defendant alleges the 911 tape had been altered. The court finds the Defendant's claim without merit. The tape was authenticated by Sandra Swartz, who made the tape of the 911 call. Exhibit B: pgs. 457-467 There is no evidence that indicates the tape had been altered. As the Defendant has failed to demonstrate that counsel's performance was deficient and that he suffered any prejudice, his claim is denied. . . . .

(Resp. Ex. 23 at p. 5).

Paschal does not show his counsel was constitutionally obliged to seek a mistrial to be reasonably effective. He fails to show his counsel overlooked any evidence of tampering or altering of the tape recording. Further, he fails to show that had counsel moved for a mistrial, the state court would have been obliged to grant the request. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground Nine does not warrant habeas corpus relief.

## Ground Ten

Paschal claims the existence of newly discovered evidence regarding credibility of the state's medical examiner. This claim does not present a cognizable basis for relief. The claimed existence of newly discovered evidence relevant to guilt of a state prisoner is not a ground for relief in a federal habeas corpus proceeding. *Jennings v. Crosby*, 2006 U.S. Dist. LEXIS 58476 (M.D. Fla. 2006) (unpublished)(citing *Williams v. Griswald*, 743 F.2d 1533, 1541 (11th Cir. 1984)(citing *Townsend v. Sain*, 372 U.S. 293, 317, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)).

Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d. 203 (1993). A claim of innocence is not itself a constitutional claim. Rather, it is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Schlup*, 513 U.S. at 315. To satisfy *Schlup*, a petitioner must first "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence--that was not presented at trial." *Id.,* at 324. The petitioner must then demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. However, the fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. The Supreme Court has not held that it extends to freestanding claims of actual innocence.

Here, the exception is inapplicable because Paschal does not seek to excuse a procedural default so that he may bring a defaulted constitutional claim challenging his conviction. He seeks habeas relief, in essence, on the premise that a witness's alleged information is newly discovered evidence. Paschal is not entitled to federal review of such a claim. The state court affirmance of the postconviction court's ruling settles that, as a matter of Florida law, Paschal did not meet the state's newly-discovered evidence standard.

Further and alternatively, Paschal defaulted the claim in Ground Ten by failing to raise the federal constitutional dimension of his claim in his second Rule 3.850 motion. Paschal argued his newly discovered evidence issue in state court on Florida law governing newly discovered evidence, which did not suffice to exhaust a federal question. *Duncan, supra.* He is foreclosed from raising his claim in federal constitutional terms in another Rule 3.850 motion by two-year limit of Rule3.850, as well as the state's successive petition and law of the case doctrines. Even if he were to attempt to allege cause to excuse a default of an identifiable federal claim, any such cause allegation is itself procedurally barred. *Cf., Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008)( it is doubtful that it is possible to procedurally default a freestanding actual innocence claim).

Ground Ten does not warrant habeas corpus relief.

## Ground Eleven

Paschal faults his counsel for failing to impeach the medical examiner. In denying his eighth Rule 3.850 claim, the state trial court found:

> Defendant alleges that Dr. Charles Siebert, the medical examiner in his case, lacked credibility. Specifically, the Defendant questions the doctor's knowledge about whether [sic] gunshot residue test was performed and the amount of time marijuana can be detected in the human body given that the person is not a chronic user. The court finds the Defendant's claim is without merit. Neither of these claims would have affected the outcome of the trial and the Defendant has failed to show any prejudice in accordance with *Strickland.*
> . . . .

(Resp. Ex. 23 at pg. 6).

Paschal's claim is conclusory and fails to overcome the strong presumption that trial counsel's performance relative to the expert's testimony fell within the wide range of professional competent assistance. *See Strickland*, 466 U.S., at 689-690. Further, it is objectively reasonable to conclude that had his counsel performed as Paschal now proposes, there was no reasonable probability of a different outcome.

Ground Eleven does not warrant habeas corpus relief.

## Ground Twelve

Paschal alleges a cumulative impact claim based on his allegations of ineffective assistance of counsel alleged in the preceding grounds. Paschal suggests a cumulative analysis of his individual claims of proposed ineffectiveness can furnish an additional basis upon which to afford him habeas relief. Such a claim does not, however, raise a cognizable basis for relief. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually support habeas relief can be cumulated to

support habeas relief."); *see also, Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 123 S.Ct. 1621 (2003).

On the merits, AEDPA review of the state decision will not entitle Paschal to relief. The state trial court, in denying Paschal's last Rule 3.850 claim raising purported cumulative omission, found that since there were no separate instances of ineffective assistance, there could be no cumulative error. (Resp. Ex. 18 at p. 6) The state court decision on Paschal's cumulative impact claim meets the AEDPA standard under either of *Strickland*'s prongs. None of the ineffective assistance of counsel claims "bundled into one" satisfies both prongs of *Strickland,* and conducting a cumulative impact analysis cannot secure for Paschal a different result. *E.g., Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)(Because "the sum of various zeroes remains zero," the claimed prejudicial effect of the trial attorneys' cumulative errors did not warrant habeas relief). It is objectively reasonable to conclude that singularly or cumulatively, the allegations of proposed ineffective assistance of counsel do not the *Strickland* standard and would not have, within a reasonable probability, affected the outcome of his case.

Ground Twelve does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Paschal's petition is denied. The Clerk is directed to enter judgment against Paschal and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 9, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
John H. Paschal